IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KAREN D. CRAIG                                                                    PLAINTIFF

                    v.                           Civil No. 14-2094

CAROLYN COLVIN, Commissioner
Social Security Administration                                      DEFENDANT

**MEMORANDUM OPINION**

   Plaintiff, Karen Craig, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.     **Procedural Background:**

   Plaintiff filed her application for SSI on December 5, 2011, alleging an onset date of January 1, 2004, due to depression, anxiety, rheumatoid arthritis, hepatitis C, fibromyalgia, and neck pain.  Tr. 29, 177-180, 205-213.  The Commissioner denied Plaintiff's applications initially and on reconsideration.  Tr. 55-58, 61-63. An Administrative Law Judge ("ALJ") held an administrative hearing on December 6, 2012.  Tr. 25-46.

   At the time of the hearing, the Plaintiff was 50 years old and possessed a limited education.  Tr. 17.  Plaintiff had no past relevant work ("PRW") experience.  Tr. 17, 33.

   On July 5, 2013, the ALJ found Plaintiff's major depressive disorder, posttraumatic stress disorder ("PTSD"), and personality disorder were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 12-15.  After partially

discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations:

> The claimant is able to perform work where interpersonal contact is incidental to the work performed and where the complexity of tasks is learned and performed by rote with few variables and little judgment. The supervision required is simple, direct, and concrete.

Tr. 15. With the assistance of a vocational expert, The ALJ then found Plaintiff could perform work as a maid or housekeeper, poultry line deboner, and automatic sewing machine operator. Tr. 18.

The Appeals Council denied review on March 18, 2014. Tr. 1-3. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. ECF No. 7. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 12, 15.

## II.   <u>**Applicable Law**</u>:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents

the findings of the ALJ, we must affirm the decision of the ALJ. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).


**III.    Discussion:**

Plaintiff raises the following issues on appeal:  1) The ALJ failed to fully and fairly develop the record, 2) The ALJ made an improper finding at Step two, 3) The ALJ's RFC determination is inconsistent with the record, and 4) the ALJ determined Plaintiff could perform jobs that she cannot perform.

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

### A.  <u>Duty to Develop the Record</u>:

In her first argument, Plaintiff asserts that the ALJ failed to develop the record with regard to her alleged Lyme disease and hepatitis C.  Specifically, she contends he should have ordered laboratory tests to confirm or negate these purported diagnoses.  The ALJ does owe a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts.  *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).  However, the ALJ is only required to develop a reasonably complete record.  *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994).  He is not required to order a consultative evaluation for every alleged impairment. *Matthews v. Bowen*, 879 F.3d 424 (8th Cir. 1989).  Rather, the ALJ has the authority to order examination if the existing medical sources do not contain sufficient evidence to make an informed decision.  *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994).  Thus, in determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision.  *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001).

Although the Plaintiff has reported a diagnosis of hepatitis C to various healthcare providers, the record contains no objective medical evidence to support these allegations.  *See*

*Marolf v. Sullivan*, 981 F.2d 976, 978 (8th Cir. 1992) (proof of a disabling impairment must be supported by at least some medical evidence). Plaintiff advised Dr. Kathleen Kralik, during her mental evaluation, that she was diagnosed with hepatitis C by the Health Department, but never followed-up to have the diagnosis confirmed. She also failed to seek out treatment for this alleged impairment. Moreover, in July 2011, she refused testing for hepatitis C when offered by her treating physician. Tr. 288. And, while hospitalized for bronchitis in October 2012, laboratory testing revealed normal serum glutamic oxaloacetic transaminase ("SGOT") and serum glutamic pyruvic transaminase ("SGPT") enzymes, signaling normal heart and liver function. Tr. 361-521.

The Plaintiff also alleges to have suffered a tick bite in her distant past. However, we can find no evidence to document a diagnosis of or treatment for Lyme disease either before or during the relevant time period. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). While it is true that she did complain of flu-like symptoms and joint pain, which can be symptoms associated with Lyme disease, these symptoms are also associated with many other impairments. And, we can find nothing to suggest that Plaintiff or her treating doctor(s) were sufficiently concerned to order the laboratory tests necessary to diagnose acute or chronic Lyme disease. In fact, she told Dr. Kathleen Kralik, during her mental assessment, that she had "never suffered until I had lyme disease. It took three months to recover." Tr. 277.

Therefore, it is the opinion of the undersigned that the ALJ was under no duty to order consultative examinations or testing to further develop the record with regard to these impairments. Sadly, the Plaintiff is attempting to shift the burden of persuasion and production onto the ALJ, when it was her own failure to obtain treatment that defeated her claim. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (Plaintiff bears the burden of persuasion to prove disability).

5

B.     **Non-severe Impairments**:

Next, the Plaintiff argues that the ALJ improperly dismissed her Lyme disease, hepatitis C, asthma, and COPD as non-severe impairments.  A "severe impairment is defined as one which significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)).  The impairment must result from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms.  20 C.F.R. § 404.1508.

After reviewing the entire record, we find no error in the ALJ's step two analysis.  As previously noted, the record contains no evidence to support the Plaintiff's contention she suffered from hepatitis C or Lyme disease.  The record does reveal doctors have treated her for bronchitis and multiple arthralgias, however, she was treated for her symptoms on only four occasions during the relevant time period.  Tr. 341-342, 351-355, 361-521, 523-541.  *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments).  Although she was said to be receiving her medications through the patient assistance program, Plaintiff was not entirely compliant with the medications prescribed.  *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (a failure to follow a recommended course of treatment weighs against credibility).  In May 2012, she reported being out of several of her medications and unable to obtain them due to financial constraints.  Tr. 351-355.  Further, in October 2012, Plaintiff stated that she was no longer using her inhalers because she could not afford them.  Tr. 361-521.  However, as previously noted, she was able to afford cigarettes, smoking one package per day, and to purchase marijuana.  *See*

*Kisling v. Chater,* 105 F.3d 1255, 1257 (8th Cir. 1997) (noting that a failure to follow prescribed treatment may be grounds for denying an application for benefits); *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (noting that despite the claimant's claim that he could not afford medication, there was no evidence that he chose to forgo smoking three packs of cigarettes a day to help finance pain medications).

Although the Plaintiff does have a history of treatment for asthma, chronic bronchitis, and COPD, she was treated for this on only one occasion during the relevant time period.  Tr. 361-521. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). In October 2012, records indicate she was hospitalized for three days due to an exacerbation of her COPD (pneumonia).  Following the administration of breathing treatments and intravenous antibiotics and steroids, doctors released her home in improved condition.  *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).

We also note that the Plaintiff's credibility and reported activities call into question the severity of her alleged physical impairments.  Prior to her alleged onset date, her own treating source questioned her credibility.  His staff members observed her exit the building, walk across the parking lot, and hop into her vehicle, with no evidence of stiffness or limp, after being treated for alleged generalized pain.  Tr. 288-290.  Further, although the doctor documented a dysthymic and anxious mood while examining her, Plaintiff was later seen laughing with her boyfriend.  Tr. 290.  *See Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) (Plaintiff's encounters with doctors appeared to be linked primarily to quest to obtain benefits, rather than to obtain medical treatment). Similarly, Dr. Kralik used the words manipulative, attention-seeking, and theatrical to describe

her.  Tr. 276-280.  And, we note some inconsistencies in her statements concerning drug and alcohol abuse, oftentimes alleging to be drug free while testing positive for marijuana.

Plaintiff's reported activities are also bothersome.  On the one hand, she argues that her pain and lung impairments are severe enough to restrict her ability to perform work-related activities.  On the other, she reports the ability to care for an elderly gentleman until his death in January 2012, assist her boyfriend's mother, grow her own garden, carry water to her trailer (she did not have running water), and collect scrap metal.  Tr. 277, 341.  And, although requested by the agency, she did not complete an adult function report.

Accordingly, for the reasons laid out above, the undersigned finds no merit in the Plaintiff's argument that the ALJ wrongfully concluded that her hepatitis C, Lyme disease, and lung impairments were non-severe.

### C.    RFC Determination:

Next, the Plaintiff contests the ALJ's RFC determination.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is

a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

Plaintiff states that the ALJ's RFC assessment is flawed because it does not incorporate physical limitations related to her pain, asthma, and COPD. Specifically, she contends the RFC should include exertional limitations (sitting, standing, walking, lifting, carrying, pushing pulling, reaching, bending, and stooping) and environmental limitations, as well as more restrictive limitations related to her personality disorder. We disagree.

For the reasons outlined in the sections above, the undersigned finds no error in the ALJ's failure to include exertional and environmental limitations in his RFC determination. Failure to seek out consistent treatment, failure to take medications as prescribed, ability to perform certain activities, and credibility issues are all proper grounds for discrediting a Plaintiff's subjective complaints of pain. Additionally, we note hospital records from October 2012, indicating that she had no limitations with regard to mobility or muscle strength. Tr. 378. She was able to walk outside of her room at least twice per day and inside her room at least once every two hours. Tr. 378.

As for the Plaintiff's mental impairments, we note that both Drs. Kralik and Efird examined her and noted no more than moderate impairments. Dr. Kralik concluded that her ability to carry out activities of daily living was adequate, her ability to cope with the typical mental/cognitive demands of basic work tasks was mildly to moderately impaired but adequate, and her ability to attend to and sustain concentration and persistence was mildly to moderately

impaired.  Tr. 283-284.  Similarly, Dr. Efird found moderate limitations with regard to her ability to make judgments on complex decisions and mild to moderate limitations with regard to her ability to interact appropriately with others, respond to normal work situations, and respond to changes in a routine setting. Tr. 548-549.  While Dr. Efird did diagnose the Plaintiff with major depressive disorder, PTSD, and personality disorder not otherwise specified, Plaintiff did not seek out formal mental health treatment for her alleged impairments.  *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability); *Pearsall v. Massanari*, 274 F.3d 1211, 1218–19 (8th Cir. 2001) (ALJ may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole). And, although she was able to obtain her medications through the prescription assistance program, she failed to take her medications as prescribed.  Tr. 353, 357-359.  We also note that the Plaintiff was using marijuana during the majority of the relevant time period, which could also be responsible for some of her symptomology.

Accordingly, it is the opinion of the undersigned that substantial evidence supports the ALJ's determination that the Plaintiff could perform work at all exertional levels with mental restrictions.

D.    **Step 5 Analysis:**

Finally, the Plaintiff avers that the ALJ failed to meet his burden at Step 5 of the sequential analysis.  It is her argument that the hypothetical questions posed to the vocational expert did not contain all of her limitations, rendering the vocational expert's testimony null and void.  However, "[t]he ALJ's hypothetical question to the vocational expert needs to include only those

impairments that the ALJ finds are substantially supported by the record as a whole." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quotation and citation omitted).

Here, the ALJ's hypothetical question included all of the Plaintiff's limitations found to exist by the ALJ and set forth in the ALJ's description of the Plaintiff's RFC. Therefore, based on our previous conclusion, *see supra* Part C, that the ALJ's findings of Plaintiff's RFC are supported by substantial evidence, we hold that the hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits. *Id.*

Plaintiff also asserts that the vocational expert testified that the limitations imposed by Dr. Brad Williams, a non-examining, consultative psychologist, would preclude the Plaintiff from performing all work.[1] However, she fails to also state that Dr. Williams specifically found her capable of performing "work where interpersonal contact is incidental to work performed, e.g. assembly work, complexity of tasks is learned and performed by rote, few variables, little judgment: supervision required is simple, direct and concrete." Tr. 318. And, this is the exact statement used by the ALJ in the hypothetical question he posed to the vocational expert. In response, the expert stated that the Plaintiff could perform work that exists in significant numbers in the national economy, and identified several such jobs. As such, we find no error in the ALJ's step five analysis.

## V.  <u>Conclusion</u>:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should

---

[1] After reviewing the Plaintiff's medical records, Dr. Williams completed a mental RFC assessment. Tr. 316-336. He found her to have moderate limitations in the following areas:  the ability to understand, remember, carry out detailed instructions; maintain attention and concentration for extended periods; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; set realistic goals; and, make plans independently of others.

be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 1st day of June, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE